UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:19-CV-20638-GAYLES

JUAN LLAURO, et. al.,
    Plaintiffs,

versus

BROWARD COUNTY, et. al.,
    Defendants.
_____/

**PLAINTIFFS' MOTION TO REOPEN CASE AND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT, WITH INCORPORATED MEMORANDUM OF LAW**

    This civil rights action challenges the veracity of several warrant affidavits submitted in support of the seizure of $2.5 million from plaintiffs' corporate and family bank accounts, a search of their corporate property, and their ultimate arrests. The complaint alleges the affidavits were materially false, misleading, and contained material omissions of fact. On June 30, 2020, this Court dismissed plaintiffs' complaint with prejudice for failure to sufficiency allege a civil rights violation. Pursuant to Federal Rules of Civil Procedure 15(a), 59(e), and 60(b), all plaintiffs (Juan Llauro, Jorge Llauro Carlos Llauro, Samuel Abad, Joel Brito, Maria Martinez, and Capri Construction Corporation) seek leave to file the attached, proposed second amended complaint (SAC) and an order reopening the case.

    In sum, this motion represents plaintiffs' first request for leave to file an amended complaint after a dismissal order. No scheduling order has been entered. Nor have the parties engaged in any discovery. Although the case is pending appeal, no judgment has been entered. The Court thus has jurisdiction to consider the timely-filed motions under Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), (vi).

## BACKGROUND

This case presents a *bona fide* civil rights claim for damages stemming from the submission of falsified warrants in support of an arrest warrant, search warrant and seizure of $2.5 million in corporate and private moneys. Four undergirding facts substantiate the plausibility of plaintiffs' claims that they were constitutionally victimized by the drafting of materially false and misleading warrant affidavits:

1) Two separate prosecuting agencies declined to pursue the underlying criminal prosecution and warrant applications championed by the detective defendants;

2) The prosecutor who handled the case admitted (in open court) that there was no probable cause for the search warrant (the arrest and seizure affidavits are materially indistinguishable);

3) After 1.5 years of criminal litigation, the prosecuting authority was unable to independently substantiate the claims contained in the detectives' affidavits; and

4) The dismissal did not result from plaintiffs' production of information not known or not available to the deputies before submission of the challenged affidavit. As an example: In dismissing plaintiff Joel Brito's criminal case, the prosecutor explained in open court that "No witness has ever testified as to any activities with Mr. Brito, other than, he was mistaken for Mr. Abad." (DE39-1:84).

A key issue raised in the motion to dismiss proceedings was plaintiffs' voluntary attachment of the challenged warrant affidavits to the complaint as exhibits. Plaintiffs' first amended complaint, filed before any responsive pleading appeared, expressly alleged that the factual statements contained in the affidavits were materially false and misleading (DE19, ¶ 6). The affidavits were presented not for the truth of the matters asserted therein by law enforcement, but to show that law enforcement in fact made the materially false and misleading statements.

The defendants' motion to dismiss, relying on factually inapposite case law, contended that the allegations contained in the disputed affidavits must be accepted as true in ruling on the motion to dismiss because they were attached as exhibits to the complaint (DE33:34). Specifically, the defendants sought dismissal on grounds that plaintiffs failed to present specific allegations in their

complaint negating the allegations contained in the disputed affidavits (DE33:34-42).

Plaintiffs' response in opposition to the motion to dismiss relied on *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), a case factually on all fours for the proposition that "[w]here a **civil rights plaintiff** attaches a **police report** to his complaint and alleges that it is false, . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss." (emphasis added).

After the filing of plaintiffs' response, the Eleventh Circuit issued its decision in *Gill v. Judd*, 941 F.3d 504, 512 (11th Cir. Fla. 2019). In *Gill*, the Court, after acknowledging that a plaintiff is "not required to attach the arrest affidavit as an exhibit to [the] complaint," concluded that once attached, a reviewing court "cannot throw out the entire arrest affidavit." *Id*. at 515. *Gill* instead directed that the reviewing court "compare each relevant allegation in the complaint with its counterpart in the arrest affidavit and decide if [it] is specific enough to prevent that statement in the affidavit from being considered." *Id*. Thus, under *Gill*, allegations contained in a police affidavit (when attached to a complaint) are presumed true unless there are specific allegations in the complaint claiming they are not true. Defendants presented the *Gill* case for the first time in their reply memorandum (DE43:1).

The Court's order applies *Gill*, finding that: "Plaintiffs do not allege that the Detectives misstated any specific evidence described in the arrest affidavit" and that "based on *Gill*'s guidance, the Detectives' specific statements in the arrest affidavit govern." (DE55:14). The order dismissed the complaint with prejudice and denied plaintiffs' request for leave to amend the complaint to cure *technical* deficiencies, on grounds that plaintiffs failed to provide "a compelling reason to allow amendment in the face of dismissal on the merits." (DE55, n.10).

The order also closes the case (DE55:20). But a final judgment has not been entered.

Plaintiffs filed a notice of appeal (DE56) on July 29, 2929, before expiration of the 180-day time period for filing a notice of appeal. *See Dixon v. Bd. of Cty. Comm'rs Palm Beach Cty.*, 518 F. App'x 607, 609 (11th Cir. 2013) ("Because the district court failed to enter a final judgment on a separate document, the judgment was not considered as entered on the docket, such that the 30-day period for filing a notice of appeal had begun to run, until 150 days had run from the entry of the court's order dismissing his complaint, on June 14, 2012.").

These Rule 15(a), 59(e), and 60(b) motions follow.

The attached sample SAC removes the disputed affidavits as exhibits to the complaint, sets forth in greater detail the materially false statements and omissions contained in the warrant affidavits, and consolidates the claims into eighteen (18) counts. The sample SAC is attached as Exhibit A.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction under Federal Rule of Civil Procedure Rule 62.1 and Federal Rule of Appellate Procedure 4(a)(4)(A)(iv) to review plaintiffs' **timely**-filed Rule 15(a), Rule 59(e), and 60(b) motions for leave to amend. The motions are timely because a separate final judgment has not been entered in this case (as required by Rule 58) and not more than 150 days have passed since the docketing of the Court's June 30, 2020 order of dismissal.

**I.      Jurisdiction over Rule 15(a) motion to amend.**

Federal Rule of Civil Procedure 62.1(a)[1] vests the district court with authority to consider a Rule 15(a) motion for leave to file an amended complaint. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013) (explaining why Rule 62.1 applies to Rule 15(a) motions for leave to file an amended complaint). Under Rule

---

[1] As amended effective December 1, 2009.

62.1, "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).

Here, plaintiffs' Rule 15(a) motion is timely. A Rule 15(a) motion is timely if filed before entry of the judgment. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (explaining that "if, for example, a plaintiff wants to amend his complaint (prior to the entry of judgment), he does so by moving the court for leave to do so pursuant to Federal Rule of Civil Procedure 15(a)"). No final judgment has been entered in this matter.[2] Nor have 150 days expired since entry of the Court's dismissal order.[3]

Furthermore, a Rule 15(a) motion is one the Court would ordinarily lack jurisdiction to grant during a pending appeal. *See Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) ("Because the proposed amendment would have altered the status of the case, the district court properly found that it was without jurisdiction to grant Plaintiffs'

---

[2] The Court's order of dismissal does not constitute a final judgment because Federal Rule of Civil Procedure 58(a) requires entry of a separate judgment. *See Davis v. Polk Cty. Sheriff's Office*, 170 F. App'x 598, 599 (11th Cir. 2005) (explaining that the district court's order of dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) required a separate document). *FOGADE v. ENB Revocable Tr.*, 263 F.3d 1274, 1286 (11th Cir. 2001) (concluding that under Rule 58, a separate judgment is required after granting a Rule 12(b) motion to dismiss).

[3] Where a separate judgment is required and a separate judgment has not been entered, Rule 58 further provides that the judgment is considered entered when 150 days have run from the entry of the order in the civil docket. *See* Fed. R. Civ. P. 58(c)(2)(B) ("For purposes of these rules, judgment is entered at the following times: . . . (2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs: . . . (B) 150 days have run from the entry in the civil docket."). *See 2M Grp., Inc. v. Solstice Mgmt.*, Ltd. Liab. Co., No. C-07-00136 RMW, 2009 U.S. Dist. LEXIS 6668, at *8 (N.D. Cal. Jan. 22, 2009) (Rule 15 did not apply where motion was filed 150 days after the stipulation of dismissal was docketed).

leave to file an amended complaint."); *Hernandez v. Coughlin*, 18 F.3d 133, 138 (2d Cir. 1994) ("Once Hernandez was deemed to have filed a notice of appeal, jurisdiction was transferred to this Court. His subsequent motion to file an amended complaint was therefore precluded because the district court was without jurisdiction to permit the amendment.").

As such, the Court may consider the motion and either deny it on the merits or issue an indicative ruling, stating its intent to grant the motion should the Eleventh Circuit remand the case for entry an order granting the motion for leave to amend. *Lee v. AFT-Yakima*, No. CV-09-3112-EFS, 2011 WL 4703106, at *3-4 (E.D. Wash. Oct. 3, 2011) (exercising authority under Rule 62.1 to consider Rule 15 motion for leave to file an amended complaint).

**II.     Jurisdiction over Rule 59(e) motion to alter or amend and Rule 60(b) motion for relief.**

Leave to file an amended complaint may also be sought under Rule 59(e) or Rule 60(b). *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1075 (11th Cir. 2017) (explaining that after a dismissal order, a plaintiff may seek leave to amend by either Rule 59(e) or Rule 60(b)(6)); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004). Under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), (vi), this Court retains jurisdiction to consider a **timely**-filed Rule 59(e) motion to alter or amend and Rule 60(b) motion for relief from order. *Williams v. Pettiford*, 238 F. App'x 459, 461 (11th Cir. 2007) (analyzing Rule 59(e)); *Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1064 (9th Cir. 2002) (analyzing Rule 60(b)); *Kull v. Kutztown Univ. of Pa.*, 543 F. App'x 244, 248 (3d Cir. 2013) ("A Rule 60(b) motion preserves jurisdiction in the District Court only if filed no later than 28 days after judgment is entered.").

Here, plaintiffs' Rule 59(e) and Rule 60(b) motions are timely. Because a separate final judgment is yet to be entered and 178 days have not passed since entry of the Court's dismissal order, the motions are timely filed "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(vi). *See Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1064

6

(9th Cir. 2002) ("because no judgment was entered, the Millers' Rule 60(b) motions were in fact filed no later than 10 days after judgment was entered."); *Rainey v. Lipari Foods, Inc.*, 546 F. App'x 583, 585 (7th Cir. 2013) ("Here the final order was entered in the civil docket on December 14, 2012, . . . thus making May 13, 2013 [150 days later] his judgment date. Since all of Rainey's post-dismissal motions were filed before that date, they were not untimely."); *Hunter v. United States*, 792 F. App'x 370, 371 (6th Cir. 2019) (Rule 59(e) motion, filed a little over a month after entry of the dismissal order, was timely because the motion was filed within 178 days of entry of the dismissal order).[4]

## ARGUMENT

### I.      Motion for leave to file amended complaint under Rule 15(a).

Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of pleadings before

---

[4] That plaintiffs filed their Rule 59(e) motion before entry of the judgment is of no moment. As the appellate court explained in *Borrero v. City of Chi.*, 456 F.3d 698, 700 (7th Cir. 2006), just as a party can file a notice of appeal before entry of a Rule 58 judgment, "the party should be allowed to file a motion to alter or amend the judgment within the time permitted for such motions even if the Rule 58 judgment order has not yet been made or docketed."

Furthermore, the Court retains full jurisdiction over the Rule 59(e) and 60(b) motions even though they were filed after plaintiffs' notice of appeal. The courts have explained that "there is no legal distinction between a Rule 59(e) motion timely filed *before* the filing of a notice of appeal and a Rule 59(e) motion timely filed *after* the notice of appeal." *Venen v. Sweet*, 758 F.2d 117, 122 n.6 (3d Cir. 1985) (internal citations omitted). *See Op. Corp. v. Roca Labs, Inc.*, 312 F.R.D. 663, 671 (M.D. Fla. 2016) ("The Eleventh Circuit has not squarely addressed this issue, but binding Fifth Circuit authority states that a district court has authority to consider and deny a Rule 60(b) motion filed after a notice of appeal."); *Ross v. Marshall*, 426 F.3d 745, 751-52 (5th Cir. 2005) (district court retained jurisdiction to rule on Rule 59(e) motion to alter or amend judgment, even though motion was filed after the notice of appeal); *McNair v. Campbell*, 315 F. Supp. 2d 1179, 1181 (M.D. Ala. 2004) ("The effect of McNair's Rule 59 motion [filed after the notice of appeal] is (1) to stay the notice of appeal until the motion is resolved and (2) to revive this court's jurisdiction."); 20 Moore's Federal Practice - Civil § 303.32 (2020) ("Since the amendment of Appellate Rule 4(a) in 1993, a timely notice of appeal is not nullified by a motion made under Civil Rule 50(b), 52(b) or 59. . . . The filing of a timely motion under any of these rules suspends the finality of the judgment and delays the effectiveness of a previously filed notice of appeal. The jurisdiction of the district court is revived without the necessity of a remand.").

judgment is entered, *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010), as well as before the expiration of a Rule 16 scheduling order deadline. *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Here, no final judgment has been entered; and pursuant to the Court's December 19, 2019 stay order (DE54), a proposed Rule 16 scheduling order was never submitted or approved. Accordingly, Rule 15(a)'s more liberal standard for granting an amendment applies. *See McInteer*, 470 F.3d at 1361-62 ("If . . . a plaintiff wants to amend his complaint (prior to the entry of judgment), he does so by moving the court for leave to do so pursuant to Federal Rule of Civil Procedure 15(a).").

The plain text of Rule 15(a) provides that "court[s] should freely give leave [to file an amendment] when justice so requires." "[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). The Eleventh Circuit has explained that "[d]istrict courts have limited discretion in denying leave to amend, and should grant a motion to amend 'unless there are substantial reasons to deny' it." *Bowers v. United States Parole Comm'n*, 760 F.3d 1177, 1185 (11th Cir. 2014) (quoting *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (alterations omitted)). "Permission may be denied where leave would cause undue delay or prejudice to the opposing party, where prior amendments have failed to cure deficiencies, or if the motive of the amendment is dilatory." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985). Importantly, Rule 15(a)'s liberal standard must be distinguished from Rule 16(b)'s "more stringent" good cause standard. *United States ex rel. D'gostino v. EV3, Inc.*, 802 F.3d 188, 194 (1st Cir. 2015); *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

  **A. This is plaintiffs' first attempt to seek leave to amend after an order dismissing their complaint.**

The Court's order of dismissal represents the first ruling on the sufficiency of plaintiffs' complaint. And the dismissal order relies on Eleventh Circuit case law issued after the filing of plaintiffs' amended complaint and response in opposition to defendants' motion to dismiss. The plaintiffs should be given a meaningful opportunity to provide a complaint that complies with the newly issued Eleventh Circuit authority.

In 2014, the Eleventh Circuit explained in *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), that "[w]here a civil rights plaintiff attaches a police report to his complaint and alleges that it is false, . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss." *See also Mighty v. Miami-Dade Cty.*, No. 14-23285-CIV, 2015 U.S. Dist. LEXIS 112532, at *33-34 (S.D. Fla. June 9, 2015) ("Even where a document is attached to the complaint, a district court must disregard it if the complaint alleges that the document is not truthful."); *Griggs v. Vitani*, No. 6:17-cv-1808-Orl-31GJK, 2019 U.S. Dist. LEXIS 11220, at *5-6 (M.D. Fla. Jan. 24, 2019) ("[I]f the plaintiff attaches an exhibit to a pleading for a reason "other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016))). Plaintiffs reasonably relied on *Saunders* and controlling decisions citing *Saunders* in drafting their original complaint and then their first amended complaint.

Yet in 2019, while defendants' motion to dismiss was pending, the Eleventh Circuit issued its decision in *Gill*, 941 F.3d at 512, which revised controlling law by stating that when a plaintiff attaches a police-drafted affidavit as an exhibit to the complaint, the allegations contained in the affidavit are accepted as true unless specifically alleged to be false in the complaint. The Court's dismissal order applies *Gill*, treating the allegations in the affidavit as true unless specifically alleged to be false in the complaint. The first amended complaint only generally alleged material

falsities in the affidavit, but did not identify those falsities with specificity.

Leave to amend is appropriate "in situations where the controlling precedents changed midway through the litigation." *Sonoma Cty. Ass'n of Retired Emples. v. Sonoma Cty.*, 708 F.3d 1109, 1117-18 (9th Cir. 2013). Assuming *arguendo*[5] that *Gill* constituted a change in controlling precedent or otherwise altered the state of the law, leave to file an amended complaint is warranted. To be sure, the attached SAC remedies the *Gill* issue by removing the affidavits as exhibits to the complaint and by setting forth specifically plaintiffs' allegations of false statements and material omissions. Because this is plaintiffs' first attempt to seek leave to amend following a dismissal order, this motion is just the appropriate case in which leave to amend should be freely given. That the amendment addresses a potential change in controlling precedent strengthens plaintiffs' request for leave to amend. *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1208-09 (S.D. Fla. 2006) (recounting the grant of leave to file an amended complaint when the Florida Legislature changed the law; recounting plaintiffs being directed to take into account the law as it presently existed in drafting an amended complaint).

### B. Leave to file an amended complaint is not futile.

Leave to file an amended complaint is not futile. First, the removal of the exhibits remedies the deficiency created by *Gill*. Significantly, Eleventh Circuit precedent supports plaintiffs' decision to cure the pleading defect by removing the affidavits as exhibits to the complaint. For example, in *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016), when that plaintiff

---

[5] Plaintiffs do not necessarily limit their argument to conceding that *Gill* represents a change in controlling law. Under Eleventh Circuit law, *Sanders*, as the earliest precedent, is binding to the exclusion of *Gill*, unless the two can be reconciled. *See Williams v. Aguirre*, 965 F.3d 1147, 1163 (11th Cir. 2020) (explaining that "only the holdings of prior decisions bind us" and that "[i]f we cannot reconcile our caselaw, we must follow the earliest precedent that reached a binding decision on the issue").

filed a second amended complaint omitting exhibits previously included in the first amended complaint, the Eleventh Circuit addressed whether the district court could reference the exhibits in the prior complaint. The Court reasoned that an amended pleading supersedes the former pleading. Thus, "when [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity." *Id*. And the district court could not consider the exhibit attached to the earlier complaint in deciding the sufficiency of the operative, amended complaint.

In addition to removing the affidavits as exhibits to the complaint, plaintiffs' proposed amendments detail with particularity the materially false statements and material omissions contained in each section of the affidavits at issue in this litigation—all fully explained and developed. For example, consider the following excerpt from the proposed amendment that addresses the false statements contained in the EKA Builders' portion of the affidavits (SAC ¶ 34):

> More importantly, the actual testimony in the interview provided by Mr. and Mrs. Narvaez differs from what the Government Defendants' claim it says on pages 15-16 paragraph (g) of the Affidavit. For example, Defendants falsely stated in the Affidavit that Cristobal Narvaez said "Jorge [Llauro] told him that he was dumb for not charging more, at least 10% of the total contract price for renting out the COI [certificate of insurance]." This statement was never made by Cristobal Narvaez in the transcribed interview.  Instead, Mr. Narvaez's attorney stated, on Mr. Narvaez's behalf, that Jorge Llauro told him he should charge ten percent because it is a lot of work.  Defendants simply added "renting out the COI" to such statement, when in fact this was never said by Mr. Narvaez. In reality, subcontractors build into their subcontracts a percentage over and above the salary of their workers to pay for overhead and profit, and a 10% profit margin for a building subcontract, like that which existed between EKA and Capri, was not uncommon. Further, Defendants falsely stated that Mr. Narvaez testified that the workers he paid were Capri-controlled employees.  Neither Mr. Narvaez nor his attorney ever gave such testimony. Additionally, Defendants also falsely stated that Mr. Narvaez said that Capri controlled EKA Builder's workers on the job sites. In fact, Mr. Narvaez testified that workers came up to him and asked him for work. Tellingly, Defendant Linville never asks in this interview whether Mr. or Mrs. Narvaez ever informed any Plaintiffs that EKA did not have the proper workers compensation insurance coverage for the employees on its payroll, or whether any Plaintiffs had such knowledge.

After listening to several hours of audio of the various unsworn interviews and comparing the actual audio to the affidavits, plaintiffs detail the material misstatements of testimony and omissions of fact contained in the affidavits. Importantly, these false statements and omissions are material. The detectives' affidavits alleged a workers' compensation criminal scheme whereby unidentified employees (defined in the affidavit as work group leaders) served as middlemen between subcontractors and certain plaintiffs. The affidavits alleged that these middlemen brokered deals for plaintiffs to rent the subcontractors' workers' compensation insurance certificates. The alleged purpose of the scheme was to avoid workers' compensation premiums. The SAC's more detailed and thoroughly described allegations of false statements and material omissions cures any defect in the complaint created by the attachment of the disputed affidavits as an exhibit.

A second example of plaintiffs' painstaking analysis of the false affidavits giving rise to this litigation is contained in the South Florida Structure Builders Corporation section. The proposed SAC details how the defendants misrepresented the alleged witnesses' unsworn interviews and omitted facts undercutting law enforcement's core claim of a workers' compensation fraud. Particularly, law enforcement falsely stated that Joel Pimental claimed he charged Capri and workgroup leaders a 4% fee for processing payroll but omitted Mr. Pimental's testimony that the twenty employees belonged to his company (Sec. Am. Compl. ¶¶ 38-43). The proposed amendment makes clear that Mr. Pimental said no such thing:

> The allegations made by the Government Defendants on pages 17-18 paragraph (g) of the Arrest Affidavit, mirrored by the allegations on pages 12-13 paragraphs 48(a-q) of the Seizure Affidavit and the allegations on pages 19-20 paragraph (g) of the Search Affidavit, are related to South Florida Structure Builders Corp. (the "SFSB Allegations"). The only apparent factual support for these allegations appears to be one recorded statement of Joel Pimentel. Contrary to all the SFSB Allegations, Mr. Pimentel makes absolutely clear in these interviews that his employees work for his company, and that he was hired by Capri as a subcontractor to perform work on

jobsites. In fact, two direct quotes from the interview makes this clear: 1) "[Question]: These twenty employees that work for your company, did they work for Capri? Were they laborers for Capri? [Answer]: No. I don't think so"; and 2) "[Question]: But you'e telling me that the checks made payable to Capri from Capri Construction, those are not. There's no commission, you're not making commission off of the checks from Capri. [Answer]: No, no." The Defendants intentionally omitted these statements of fact, central to the very criminal scheme they alleged was occurring, out of the affidavit.

Even more egregiously, the Government Defendants outright lied when they stated in the Arrest Affidavit (mirrored by the Seizure Affidavit) that "Pimentel advised that the agreement he had with Capri and the work group leaders was a 4% charge for the rental of his insurance certificate." Pimentel actually testified that he specifically did not rent his certificate to Capri and did not have any agreement to be paid a percentage related to his work for Capri: "[Question:] When a check comes from Capri, made payable to you, who do you give the money back to when you take your percentage out? [Answer]: No, that's not a percentage. That's my-- the job I'm doing with my workers. … [Question]: There's no commission, you're not making commission off of the checks from Capri. [Answer]: No, no. [Question]: You're not paying somebody at Capri or- [Answer]: No. [Question]: -- somebody else for getting that work? [Answer]: No."

….

The transcript makes clear that Mr. Pimentel's company worked as a subcontractor for Capri, had its own employees, would provide labor for Capri, and would receive checks or other payments from Capri for the labor provided according to terms of the subcontract. Mr. Pimentel does not mention Capri assigning work groups to job sites, and makes no mention of any invoices related to such work provided by Capri supervisors. Defendants simply fabricated these allegations from whole cloth.

The Affidavits also contain a misleading statement claiming that Mr. Pimentel said that 36 employees belong to Capri Construction. Mr. Pimentel's statement, when viewed in the context of the conversation it occurs in, makes clear that these were employees of his company, whose salary he was responsible for, who worked for his company performing work on Capri job sites pursuant to a subcontractor agreement his company had with Capri. The BSO representative initially asked no follow up questions to clarify what Mr. Pimentel, for whom English is a second language, meant and never inquired as to who controlled these employees. In fact, further on in the interview Mr. Pimentel makes statements that make clear these are his company's employees, not Capri's. The only specific factual allegations of control of these employees in the entire interview are 1) Mr. Pimentel's statement that he paid these employees out of his own pocket and 2) that his employees are "all his people there, providing labor for Capri." In fact, Mr. Pimentel makes clear that his company was hired to work on Capri jobsites as Capri's subcontractor and that he actually paid his employees using his own money, while he waited for Capri's payment which he would receive after the work his company performed

passed inspection (pursuant to the terms of his subcontract with Capri). When asked what companies or people he has agreements with to "rent out" his certificate of insurance, he does not mention any of the Plaintiffs, including Capri. He offers specific testimony that he was responsible for his workers, who his company used to provide labor for Capri pursuant to the relevant subcontract. In fact, Mr. Pimentel makes this very clear: "[Question:] Capri is the general contractor that's subbing work out to you. [Answer]: Correct. [Question]: You don't work for Capri do you? [Answer]: No, no, no." This arrangement is the textbook definition of how subcontracting works, and the Defendants not only omitted this information from the SFSB Allegations but also falsely claimed Mr. Pimentel said the opposite.

Most damning to the Government Defendants, he states explicitly in his interview that Capri is not involved in any scheme to run labor costs through South Florida Structure Builders: "[Question]: MD: Or is it that Capri is using your company to run labor costs through South Florida Structure Builders? [Answer]: No".

The expanded and detailed allegations of false statements and material omissions combined with the removal of the exhibits from the prior complaint sufficiently establish that granting leave to amend is not futile.

    **C.**    **There is no undue delay or undue prejudice since all deadlines (including the deadline for filing a proposed scheduling order) were stayed pending resolution of the motion to dismiss.**

There is no undue delay or prejudice. As sought by the defendants, the Court stayed the deadlines for submitting a proposed scheduling order. Consequently, there is no case timeline, much less a trial date, at issue here. Furthermore, there has been no discovery or initial Rule 26 disclosures. Even more, this motion represents plaintiffs' first attempt to seek leave of court to file an amended complaint after a court order of dismissal.

Under Eleventh Circuit precedent, "[p]ermission [to amend a plaintiff's complaint] may be denied where leave would cause undue delay or prejudice to the opposing part[ies], . . . or if the motive of the amendment is dilatory." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985) (citations omitted). "The Eleventh Circuit cases upholding denials of leave to amend based on undue delay involve delays measured in years and/or extending beyond key deadlines." *Allstate Indem. Co. v. Price*, 2012 U.S. Dist. LEXIS 157447, 2012 WL 5416426,

at *2 (S.D. Ala. Nov. 2, 2012) (footnote omitted).

Plaintiffs' satisfy this requirement because the case was stayed pending a ruling on the motion to dismiss and, accordingly, discovery has not been pursued. For example, in *Atlanta Indep. Sch. Sys. v. S.F.*, 740 F. Supp. 2d 1335, 1356 (N.D. Ga. 2010), waiting "over ten months from the commencement of the action" to seek leave to amend a complaint did not constitute undue delay, where discovery had not commenced. Similarly, in *Jeanty v. City of Miami*, No. 10-20513-CIV, 2011 U.S. Dist. LEXIS 163518, at *10-11 (S.D. Fla. Sep. 16, 2011), defendants failed to demonstrate any prejudice "where discovery has been previously stayed against them" and the plaintiff sought leave to amend in order to clarify the scope of the claims. Here, plaintiffs do not seek to add additional claims. Their motion and proposed SAC clarifies the scope of their claims by specifying the alleged fraudulent statements and omissions.

*Collins v. Int'l Dairy Queen*, 190 F.R.D. 633, 635 (M.D. Ga. 2000), is also instructive. It involved a six-year old case and several amendments. Yet, the district court determined that the delay in filing an amendment did not constitute undue delay because "discovery ha[d] not yet been completed and a trial date ha[d] not yet been set." *See also Williams v. Select Portfolio Servicing, Inc.*, No. 1:15-cv-03791-RWS-RGV, 2016 U.S. Dist. LEXIS 192229, at *18-19 (N.D. Ga. Dec. 20, 2016) (waiting more than ten months to seek leave did not constitute undue delay where discovery had not yet commenced and it was plaintiffs' first attempt to seek leave of Court to amend the complaint); *Johnson v. Kendrick*, No. 1:05-CV-105 (WLS), 2006 U.S. Dist. LEXIS 54929, at *17 (M.D. Ga. Aug. 8, 2006) (no undue delay where discovery was stayed until the court's ruling on defendants' motion to dismiss).

Applied here, there is no undue delay or prejudice to the defendants.

**II.      Rule 59(e) motion for leave to file an amended complaint and Rule 60(b) motion for relief from order.**

"A district court's discretion to dismiss a complaint without leave to amend is 'severely restricted' by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Higdon v. Fulton Cty.*, 746 F. App'x 796, 801 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988))." "In this circuit, these 'same standards apply when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e).'" *Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). *See Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) ("Rule 15(a)'s abuse of discretion standard applies when a plaintiff seeks to amend an unamended complaint after entry of judgment by moving to vacate a dismissal pursuant to Fed. R. Civ. P. 59(e)."); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981) ("the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a)").

Similarly, a pre-judgment Rule 60(b) motion that sufficiently sets forth the substance of the proposed amendment and demonstrates that an amendment would not be futile should be granted. *Newton v. Fla.*, 895 F.3d 1270, 1278 (11th Cir. 2018). This is in part due to the fact that Rule 15(a)'s liberal amendment policy does not expire until a judgment has been entered. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d at 1344 (explaining that Rule 15(a) of the Federal Rules of Civil Procedure "governs amendment of pleadings before judgment is entered"). *See Furr v. TD Bank*, N.A., 587 B.R. 743, 748 (S.D. Fla. 2018) (analyzing why Rule 15(a)'s liberal amendment policy applies to Rule 59(e) and Rule 60(b) motions)

Accordingly, the above-cited Rule 15(a) standard applies, including the rule that a district court need not grant leave to amend where the amendment would be futile. *Corsello v. Lincare,*

*Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). *See also HSI Chang v. JPMorgan Chase Bank, N.A.*, 841 F.3d 914, 922 (11th Cir. 2016) ("When, as here, the plaintiff sought through a Rule 59(e) motion leave to amend his complaint and the district court denied the motion on the basis that the amendment would be futile, to determine whether the district court abused its discretion in denying the Rule 59(e) motion we must ask 'whether the proposed complaint indeed failed to state a claim for relief.'").

As explained in Point I of the Argument Section, plaintiffs' proposed amendments satisfy Rule 15(a)'s standard. There has been no undue delay or prejudice to the defendants and leave to file an amendment is not futile. Plaintiffs' proposed amendment removes the affidavits as exhibits to the complaint and presents more detailed allegations of the plethora of materially false statements and material omissions contained in the subject affidavits. *See Thomas*, 847 F.2d at 773 (holding that—under a Rule 59(e) analysis— "We cannot say that dismissal of Thomas' § 1983 claim without leave to amend was proper. More specific allegations (e.g., why Thomas' need for medical attention was obvious, why the defendants should have known that Thomas needed medical attention) would have remedied the pleading problems found by the district court. In addition, there was no undue delay, bad faith or dilatory motive on 'part, and the defendants would not have been prejudiced by amendment of count II of the complaint."). Under these circumstances, leave to file an amended complaint should be granted under Rule 59(e).

## CONCLUSION

For these reasons, the Court should reopen the case and enter an order granting plaintiffs' motion for leave to file an amended complaint under Rule 59(e) and Rule 60(b) as well as include within its order an indicative ruling stating that it would grant plaintiffs' motion for leave to file an amended complaint under Rule 15(a) if the Eleventh Circuit remanded the case to this Court for entry of such an order.

Respectfully submitted,

By:     */s/ Richard A. Alayon*
Richard A. Alayon, Esq.
Florida Bar No. 934290
**ALAYON & ASSOCIATES, P.A.**
135 San Lorenzo Avenue, Suite 820
Coral Gables, Florida 33146
Phone: (305) 221-2110
Fax: (305) 221-5321
Email: pleadings@alayonlaw.com
       ralayon@alayonlaw.com

By:     */s/ Anthony Accetta*
Anthony Accetta, Esq.
Florida Bar No. 148318
**LAW OFFICES OF ANTHONY ACCETTA PA**
135 San Lorenzo Avenue, Suite 820
Coral Gables, Florida 33146
Phone: (305) 448-4529
E-mail:law@anthonyaccetta.com


By:     *S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd Street, Suite 3550
Miami, FL 33131-2154
Tel: 305.789.5989
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
mdavis@kuehnelaw.com
*Appellate Counsel of Record for Plaintiffs*

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

The undersigned certifies counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and the parties oppose this request.

**LOCAL RULE 7.1(b)(2) REQUEST FOR HEARING**

Plaintiffs' request a hearing on the motion. Given the unique procedural posture of this case and the weighty appellate procedural and jurisdictional issues raised by the motion, the interests of justice and fair resolution of the motion would be served by a hearing of not more than fifteen minutes per side.

**CERTIFICATE OF SERVICE**

I CERTIFY that on November 9, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.